## MATTER OF GUIMARAES

### In EXCLUSION Proceedings

### A-8755979

### *Decided by Board May 15, 1964*

Since appellant's absence of a month to Portugal to visit his parents is not within *Rosenberg* v. *Fleuti*, 374 U.S. 449, despite his continuing intent not to abandon residence here, his return to the United States following such absence constitutes an entry upon which to predicate a ground of exclusion.

EXCLUDABLE: Act of 1952—Section 212(a)(22) [8 U.S.C. 1182(a)(22) (1958)]—
Ineligible to citizenship—Applied for and received relief from service in the armed forces.

Applicant, a 55-year-old married male, a native and citizen of Portugal, admitted to the United States for permanent residence in 1954, sought to enter the United States on February 28, 1960, after a visit to Portugal of a month. His exclusion was ordered on the ground that his execution on April 30, 1943 of an application for exemption from service in the armed forces of the United States had made him ineligible to citizenship and, therefore, inadmissible to the United States. Applicant's appeal was dismissed by the Board on August 16, 1961.

Applicant requests reopening of his exclusion proceeding for a reexamination of the circumstances surrounding his visit to Portugal so that there may be a determination in view of *Rosenberg* v. *Fleuti*, 374 U.S. 449 (1963), as to whether he intended to make a meaningful departure. The motion will be denied.

With two exceptions, any coming of an alien from a foreign place, whether it is a first coming or a return, is an "entry" subjecting the alien to the exclusion provisions of the immigration law. The two exceptions are: (1) a coming following an involuntary departure, (2) a coming following a departure which "was not *intended* or reasonably to be expected" by the alien. (Emphasis supplied.) An alien falling within an exception does not make an "entry" upon his return; *i.e.*, he is regarded as if he had not left the United States (section 101(a)(13) of the Act, 8 U.S.C. 1101(a)(13) (1958)).

In *Fleuti, supra*, the Court passing on the second exception held that an alien's departure made without the desire to disrupt his permanent residence was not an "intended" departure within section 101(a)(13) of the Act. The Court did set forth some factors relevant in determining whether a departure had been intended to be disruptive of residence (length of the absence, purpose of the visit, need to secure travel documents) but preferring that interpretation evolve judicially made no attempt to set down a firm rule for classifying departures. The Court did state that an "innocent, casual and brief" trip could be one which was not "intended"; *i.e.*, one in which the intent to disrupt residence was absent.

The Board held that Fleuti, a permanent resident, who had briefly visited Mexico, had been excludable on his return as one afflicted with psychopathic personality. The Court considering whether Fleuti came within the second exception but being unable to decide because the record contained no detailed description or characterization of the trip to Mexico beyond the fact that Fleuti had gone on a visit of a few hours, remanded the case to the Service for further consideration, stating, "If it is determined that respondent [Fleuti] did not 'intend' to depart in the sense contemplated by section 101(a)(13) [of the Act], the deportation order will not stand * * *" (374 U.S. 463).

Applicant believes that development of the facts concerning his visit will show that he had a continuing intent to return to the United States and, therefore, that he did not intend to depart in a manner disruptive of his permanent residence: he was absent for only a month—a short time, especially so in terms of the entire period he had been in the United States; furthermore, he had left only to visit his aged parents in Portugal, leaving behind his wife and a child, a home he owned, a business, assets, land, and a checking account.

The trial attorney opposes reopening as fruitless because of the contrast between Fleuti's excursion of a few hours and applicant's longer absence; and Fleuti's casual departure and applicant's departure which required him to obtain a Portuguese passport and transportation. The trial attorney also raises a new issue: he points out that *Fleuti* applies only to an alien admitted for permanent residence, but he contends that the applicant was not so admitted because his admission on September 28, 1954, for permanent residence was in error since he was then inadmissible as one ineligible to citizenship.

Counsel answers these contentions by pointing out that although Fleuti was absent only a few hours, the Court in reaching its conclusion concerning the necessity for an intent to disrupt residence referred to the fact that Congress had authorized absence of aliens for up to

six months without penalty in naturalization proceedings. Counsel states that *Fleuti* is not limited to visits to territory bordering the United States since a trip to Mexico could cover great distances, and a trip to other foreign lands could with today's rapid means of transportation be accomplished within a matter of hours and might not cover as much distance as the trip to a distant part of Mexico. He also points out that an alien going to contiguous foreign territory is often required to obtain a ticket for transportation and must obtain consent of the foreign government to enter. Counsel contends that the issue raised by the trial attorney as to whether the applicant is a legal resident, cannot be tested here but must be the subject of a deportation proceeding; he cites *Matter of V—G—*, 9 I. & N. Dec. 78, as authority.

We believe that applicant intended that his departure to Portugal was to place him in a foreign place within the meaning of section 101(a)(13) of the Act and, therefore, made him upon his return, subject to the laws relating to aliens who are seeking to enter the United States. Under these laws he was properly excluded. That a resident alien's possession of a continuing intent to return from a visit abroad does not remove him from the exclusion provisions of the immigration laws, is clear from the fact that Congress provided for the readmission of a *returning resident who was excludable* under the immigration laws; in fact, possession of a continuing intent to return is made a condition of eligibility for relief (*Matter of S—*, 5 I. & N. Dec. 116; section 212(c) of the Act (8 U.S.C. 1182(c) (1958)). That *Fleuti* did not alter this interpretation of section 212(c) of the Act, may be seen from the fact that Fleuti, being a visitor to Mexico, necessarily retained an intent to return; however, this intent to reurn did not in and of itself exempt him from the application of the immigration laws upon his return. This is shown by the fact that the court, despite Fleuti's intention to return, remanded the case for a determination as to whether Fleuti intended to depart in a manner disruptive of his residence. In view of the action taken by the court in *Fleuti*, and the command of section 212(c) of the Act, we must rule that a mere showing by an alien that he intended to retain domicile does not establish that he did not make an "intended" departure when he left the United States on a visit abroad.

Counsel contends that since one visiting contiguous territory may require transportation and may travel a great distance, it is proper to hold that a trip of equal distance to noncontiguous soil should not be considered an "intended" departure. The reasoning is open to the objection that *Fleuti* does not hold that a trip to Mexico of the nature hypothesized would not constitute an "intended" departure.

The court's statement as to what constitutes an "intended" departure to foreign territory and what does not is admittedly general in nature, but in our opinion nothing said there authorizes us to rule that applicant did not make an "intended" departure. A brief visit of a few hours is different from the longer period involved here; the innocent and casual nature of a trip made by merely stepping over an international boundary contrasts strongly with the comparatively sophisticated, and planned nature of a trip requiring procurement of travel documents (passport and tickets), and involving the realization that one is separating himself from this country.

The cases relied upon by counsel are not applicable:

*Matter of Cardenas-Pinedo*, Int. Dec. No. 1295, involved trips to Mexico for a few hours.

*Matter of Yoo*, Int. Dec. No. 1305, involved a visit to Mexico for four hours on a sight-seeing trip.

*La Rochelle v. Sahli*, 323 F. 2d 364, 6th Cir. (1963), was a remand of the case to the Service at the request of the Service. No facts are stated.

Since we find that applicant is not within *Fleuti* for the reasons stated, we do not think it necessary to consider the issue as to legal residence raised by the Service for the first time upon this appeal.

**ORDER:** It is ordered that the motion be and the same is hereby denied.